Thomas J. MAXWELL, Plaintiff,

v.

Ezra T. BENSON, Secretary of Agriculture of the United States of America, and United States of America, Defendants (two cases).

Civ. Nos. 1065, 1066.

United States District Court
N. D. Iowa, W. D.

May 1, 1959.

Stilwill & Wilson, Charles F. Stilwill and Kenneth T. Wilson, Sioux City, Iowa, for plaintiff.

F. E. Van Alstine, U. S. Atty., Philip C. Lovrien and William R. Crary, Asst. U. S. Attys., Sioux City, Iowa, for defendant, United States of America.

BECK, District Judge.

These actions, dismissed by stipulation as against Secretary of Agriculture

Ezra T. Benson, were consolidated for purpose of trial. One was brought to set aside a determination by the Iowa State Stabilization and Conservation Committee forfeiting plaintiff's 1957 payment under his "Soil Bank Acreage Reserve Agreement" and assessing a 50% penalty against him, and the other one to set aside a like determination by the same Committee under the plaintiff's "Soil Bank Conservation Reserve Contract" for the same year, but on another tract and for a different amount.

The State Committee's official determination of the alleged violations under both of said agreements were as follows (formal parts, description of the farms, contract dates and references to procedural matters having been omitted):

"You are hereby notified that the Agricultural Stabilization and Conservation State Committee, after giving you notice and a full opportunity to be heard in accordance with regulations issued by the Secretary of Agriculture, has made the following determinations in accordance with such regulations with respect to the above-identified Acreage Reserve Agreement.

"1. The State Committee hereby determined the above-identified Acreage Reserve Agreement to have been violated in that: *The Acreage Reserve was knowingly and wilfully grazed.*

"2. Compensation paid or payable under the above-identified Acreage Reserve Agreement shall be forfeited or refunded as follows:

"T. J. Maxwell            $1407.60

(Name of Producer)    (Amount)

"If compensation has already been paid, the producers are required to refund the amount shown above. The producers liable for refunds shall be liable also for interest at the rate of six per centum per annum from 12–13–57, except that there shall be no interest due on any amount of such refund which is remitted to the office of the County Committee within 30 days from such date. In any case where any compensation paid a tenant or sharecropper who did not sign the above-identified Acreage Reserve Agreement is required to be refunded, the producer signatory to the Acreage Reserve Agreement shall be jointly and severally obligated with the tenant or sharecropper to make such refund.

"3. It has also been determined that the producer named below knowingly and willfully Grazed in violation of the above-identified Acreage Reserve Agreement and are jointly and severally liable, in accordance with Section 123 of the Soil Bank Act [7 U.S.C.A. § 1811] and the regulations issued by the Secretary, for a civil penalty of $703.80. (The civil penalty is equal to 50 per centum of the total compensation payable for compliance with the agreement.) Payment of the civil penalty should be remitted to the office of the County Committee.

"T. J. Maxwell

(Name of Producer)

"The determinations contained herein were made by the undersigned members of the Agricultural Stabilization and Conservation State Committee.

"Max M. Soeth  Gerald C. Randleman

"Joe Carter",

with the forfeiture fixed at $866.80 under the Conservation Reserve Contract, that being the total payment for 1957, and the civil penalty at the maximum of 50%.

The following provisions are a part of the Acreage Reserve Agreement as well as of the Conservation Reserve Contract and material or related to the issues which are before the court on this review:

"Part IX—Terms and Conditions

"B (2) Harvesting and grazing

prohibited. No crop shall be harvested from the acreage reserve after this agreement is filed with the county committee and prior to January 1, 1958, and the acreage reserve shall not be grazed after such filing of the agreement and before January 1, 1958, unless the Secretary gives written consent to such grazing; Provided, that such restrictions shall not apply to harvesting or grazing a crop which matured and normally would have been harvested in 1956 but which was not harvested in 1956 due to conditions beyond the control of the producer, unless harvesting of the crop in 1956 would have been in violation of a 1956 acreage reserve agreement."

"D. Civil Penalty. If the producer (i) knowingly and willfully grazes or harvests any crop from the acreage reserve in violation of this agreement, or (ii) knowingly and willfully harvests any acreage of the commodity in excess of that shown in Item 6, Part I, on the front hereto, he shall be subject to the civil penalty of 50 per centum of the compensation payable for compliance with this agreement imposed by section 123 of the Soil Bank Act. Such penalty shall be in addition to any amount required to be forfeited or refunded under section 'L' of this Part IX."

"L. Violations. (1) If the Secretary determines that there has been a violation of this agreement and that such violation is of such a substantial nature as to warrant termination of this agreement, the producer agrees that all rights to compensation hereunder shall be forfeited, and agrees to refund to the United States all compensation received by him or by any tenant or sharecropper hereunder."

"(2) If the Secretary determines that there has been a violation of this agreement but that such violation is of such a nature as not to warrant termination of this agreement, the producer agrees to accept such adjustments in compensation, to forfeit such benefits, to make such refunds to the United States of compensation received by him or by any tenant or sharecropper hereunder as the Secretary may determine to be appropriate."

"(4) The determination as to whether a violation has occurred, and whether such violation is of such a substantial nature as to warrant termination of this agreement, and the amount of any adjustment forfeiture, or refund, shall be made in accordance with regulations issued by the Secretary."

Preliminary to consideration of the merits of the plaintiff's requests, in both cases, that the State Committee's determinations be set aside and held for naught, are questions relating to the court's jurisdiction for hearing of the judicial review contemplated and provided for under the Soil Bank Act, 7 U.S.C.A. § 1801 et seq.

Presently there is agreement in this record by the Government that jurisdiction for that purpose exists, concurred in by the plaintiff to the extent of the limitations of his demands.

■■■ Jurisdiction in any case or cases, however, is not a matter of consent and agreements between litigants cannot confer it. Jurisdiction is within and a part of the court's powers if granted by the legislation which necessarily must be applied and invoked to resolve issues raised and if the facts required by such legislation for jurisdictional purposes can be supplied.

Direct and specific answers as to this query are in the procedural provisions found in and the factual background required for jurisdiction, under 7 U.S.C.A. § 1831(d), which provides:

"A contract shall not be terminated under paragraph (6) of subsection (a) of this section unless the nature of the violation is such as to defeat or substantially impair the purposes of the contract. When-

ever the State committee believes that there has been a violation which would warrant termination of a contract, the producer shall be given written notice thereof by registered mail or personal service, and the producer shall, if he requests such an opportunity within thirty days after the delivery or service of such notice, be given an opportunity to show cause, in an informal proceeding before the county committee under regulations promulgated by the Secretary, why the contract should not be terminated. If the producer does not request an opportunity to show cause why the contract should not be terminated within such thirty-day period, the determination of the State committee made in accordance with regulations of the Secretary shall be final and conclusive. If the producer within such thirty-day period requests an opportunity to show cause why the contract should not be terminated, the county committee, at the conclusion of the proceeding, shall submit a report including its recommendations, to the State committee for a determination, on the basis of such report and such other information as is available to the State committee, as to whether there has been a violation which would warrant termination of the contract. The producer shall be accorded the right, in accordance with regulations promulgated by the Secretary, to appear before the State committee in connection with the State committee's determination of the issue. The producer shall be given written notice by registered mail or personal service of the State committee's determination. If the producer feels aggrieved by such determination, he may obtain judicial review of such determination by filing a complaint with the United States district court for the district in which the land covered by the contract is located, within ninety days after the de-livery or service of notice of such determination, requesting the court to set aside such determination. Service of process in such action shall be made in accordance with the rule for service of process upon the United States prescribed by the Rules of Civil Procedure for the United States District Courts. The copy of the summons and complaint required to be delivered to the officer or agency whose order is being attacked shall be sent to the chairman of the State Committee. The action in the United States district court shall be a trial de novo to determine whether there has been a violation which would warrant termination of the contract. If the producer does not seek judicial review of the State committee's determination within the ninety-day period allowed therefor, the State committee's determination shall be final and conclusive. The terms 'county committee' and 'State committee' as used herein refer to the county and State committees established under section 590h of Title 16."

■ Grant of jurisdiction is explicit in the procedural directives contained in that section, formal termination of the contracts is not found in the section as a prerequisite to jurisdiction for review and implicit in the State Committee's determinations of forfeiture of payments and assessment of penalties is the "State committee believes", specified as a requirement, "that there has been a violation which would warrant a termination of the contract". Jurisdictional requirements for review are met as the Committee forms the "believes" referred to in this section, as it makes its official determinations and as the "aggrieved" producer timely files his complaint in the United States district court. Other underlying reasons are found in the actual termination for all practical purposes of the Acreage Reserve Agreement, as all rights to compensation under it were forfeited and in

the fact that a violation warranting forfeiture of all rights to compensation for one year of the five-year Conservation Reserve Contract, would also have warranted a termination of the remaining four. Such a combination of enactments, facts and procedural arrangements, completes the jurisdictional process. More is not required. 7 U.S.C.A. §§ 1811, 1812, 1821(a) (i) and 1831(a) (6) (A), (d). See also in re: Mulford v. United States, 1939, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092.

Claim has been made by the Government that it is immune from suit in any court except by its own consent, Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152, that such consent could be granted only by the Congress, that this extends to the officers and agencies of the United States, Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427, and that its executive and administrative officers are without power to waive or lift such restrictions. Carr v. United States, 98 U.S. 433, 25 L.Ed. 209; Case v. Terrell, 11 Wall. 199, 78 U.S. 199, 20 L.Ed. 134; United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; State of Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235.

■ Such congressional consent is in the Soil Bank Act. Combined with declarations of the reasons for the passage of the Act, objectives, scope, administrative procedure, contracts, violations and penalties, are provisions for judicial review and final determinations by trial de novo in the United States district courts. Such a review is not in any sense a new action against the United States. It is but a concluding part in the whole plan contemplated by the Congress as it passed the Act, a fitting into its administration of a judicial device to assure due process and one expressly authorized by the Congress. 7 U.S.C.A. § 1801–1837. Blackmar v. Guerre, 342 U.S. 512, 72 S.Ct. 410, 411, 96 L.Ed. 534.

Pertinent on that point is the following statement by the court in that case:

"While § 118k(c) of the (Hatch) Act does provide that a state officer or employee found to have violated § 118k(b) may obtain review in the District Court of the district in which he resides, this is not authorization for a new proceeding against the Civil Service Commission. *It is authorization only for a transfer of the case from the Commission to the District Court—a continuation of the same proceeding before another tribunal*". (Emphasis supplied.)

Certain rules apparent from the terms of the Act and the regulations promulgated by the Secretary for its enforcement are basic as consideration is given to the plaintiff's request, in both cases, that the determinations of the State Committee be set aside and held for naught.

■ One is that a producer's contract under the Soil Bank Act and of the kind entered into by the plaintiff, cannot be terminated unless the violation of it is such as to defeat or substantially impair its purposes and forfeiture of contract payments without a finding of such a violation is contrary to the terms of the producer's contract and a nullity as a matter of law, being without any authority in the statute. 7 U.S.C.A. §§ 1821 (a) (ii) and 1831(d).

■ The burden of proof in these cases is on the plaintiff to establish by a preponderance of the evidence that the State Committee as it made its determinations failed to find violations "such as to defeat or substantially impair the purposes of the contract". 7 U.S.C.A. § 1831(d). That requirement was met by the plaintiff as he introduced evidence to show that the State Committee failed to make a finding of such violations and that its official determinations actually were based on the theory and on the assumption that any violation, however slight or trivial, would constitute sufficient basis for the action it took.

■ But these reviews being by trial de novo, it is necessary to ascertain the

merits of the Government's defense and the evidence relating thereto that the contract acres were illegally grazed as claimed by the Government. Bley v. Luebeck, 377 Ill. 50, 35 N.E.2d 334; Texas Liquor Control Board v. Saiz, Tex. Civ.App., 220 S.W.2d 502; Bardwell v. Riverside Oil & Refining Company, 139 Okl. 26, 280 P. 1083.

■ Those violations, being matters relating to defense and relied on as such, it is for the defendant to prove by a preponderance of the evidence, that they were of such nature as to defeat or substantially impair the purposes of the two contracts. 7 U.S.C.A. §§ 1821(a) (i), 1831(d).

■ In the evidence relating to contract violations as to grazing there is admission by the plaintiff that he some time after the first of May, turned six or eight of his colts out on his whole farm, which, aside from the ninety-three contract acres consisted of a fifty-acre pasture. Two older horses, kept in the pen mostly, were also allowed to roam. One of those colts was a year and a half, another four or five months old and the others between six and ten. One was killed the forepart of June, four were sold about the same time upon agreement for removal before June 15, but with delay by the buyer in that respect until the second week in July. Left-over ears of corn from the previous year's corn crop in the usual amount were on the contract acres and the grass seeded thereon in May by the middle of July had reached a height of nearly four inches.

There was testimony by members of the local ASC Committee who appeared as witnesses for the Government that horses were seen on the acres as late as the first part of August. One claimed he had seen eight. He later admitted he wasn't sure if it was one or eight and none of them were certain that they had ever seen more than two. In conflict with that testimony is the plaintiff's, that the horses were constantly kept in the pen after the first part of July, at which time the plaintiff returned from a trip to the south, and that the remaining small colt from that time on was in another pasture.

Outside of the presence of these colts on the farm and at some times on the contract acres, there is no evidence to show if they were feeding on the left-over corn or on the May seeding of the grass. There is none to show exactly when such grass could have been subject to grazing. Webster's New International Dictionary, Second Edition, defines and uses the term as follows: "1. Grazing: A pasture; growing grass. 2. Grazing: That grazes. 1. Graze: (1) To feed or supply (cattle, sheep, etc.) with grass or pasture. "A field or two to graze his cows." (2) To feed on; to eat (growing herbage); to eat grass from (a pasture); to browse. (3) To tend (cattle, etc.) while grazing. * * Intransitive: (1) To eat grass; to feed on growing herbage; as cattle graze on the meadows. (2) To yield grass for grazing." Effect of what grazing may have been done is not disclosed. What periods the colts were on the acres, apart from the periods they were in the pasture, is not established. There is no proof that the horse or horses seen on the premises after July 15, belong to the plaintiff, the inference under the whole record being to the contrary, and there is positive proof that none of the plaintiff's one hundred head of cattle in a nearby pasture ever strayed in or on the acres contracted to the Government.

Inconsequential, from the viewpoint of what was sought to be achieved under the contracts is a fitting description of the incidents this evidence discloses. These are the slight and trivial ones to be settled by adjustments in payment as prescribed by specific provisions in the Act, 7 U.S.C.A. § 1821(a) (ii), and not by forfeitures. The Government's asserted violations have not been proved within the preponderance of evidence rule and it is so held.

Said subparagraph (ii) relating to adjustments in payments where violations are of such nature as not to warrant

termination of producer's contracts specifies:

"In the event that the Secretary determines that there has been a violation of the contract but that such violation is of such a nature as not to warrant termination of the contract, to accept such payment adjustments, forfeit such benefits, and make such refunds to the United States of payments and benefits received by him, under the contract, as the Secretary may determine to be appropriate."

Contract terms requiring a producer to accept such determinations by the Secretary are a part of each of the two contracts which are before the court in these cases. Part IX—Terms and Conditions, Subparagraphs (2) and (4). The State Committee, however, did not make its determinations under that subparagraph of the Soil Bank Act. Its actions, instead, as already indicated, were taken on the theory that any violation warranted forfeitures of the contracts. Proceedings under that subparagraph and the related contract terms, for that reason are not before the court in these reviews and that is the position taken by the Government throughout these proceedings and in the course of the trial. The judicial review by trial de novo in cases arising under the Act are restricted to questions heard and raised in the hearings before local and State Committees.

The Government's demand for judgment in each of the two cases, for the amount of the assessed penalties contained in its counterclaims, is based on the theory, presently entertained, that the court has jurisdiction finally to determine all questions arising in connection with those demands and that the statutory basis is in 7 U.S.C.A. § 1811 that:

"Any producer who knowingly and willfully grazes or harvests any crop from any acreage in violation of a contract entered into under section 1821 or 1831 of this title shall be subject to a civil penalty equal to 50 per centum of the compensation payable for compliance with such contract for the year in which the violation occurs. Such penalty shall be in addition to any amounts required to be forfeited or refunded under the provisions of such contract, and shall be recoverable in a civil suit brought in the name of the United States."

The State Committee's official determinations as to the two contracts, including a finding in each to the effect, that the plaintiff "knowingly and willfully grazed" in violation of the terms of the respective agreements and for that reason was liable for the penalties imposed by that section, bring these cases here for judicial review.

Jurisdiction for such review is found in the fact of that section being a part of the Soil Bank Act, in the penalties imposed, being an inter-related part of the entire administrative structure, in the inclusion within the judicial review of questions relating to substantial impairment of the contracts, which includes impairments from the producer's as well as the Government's point of view and in the procedural section of the Soil Bank Act. 7 U.S.C.A. §§ 1811 and 1831(d).

Final determinations on trial de novo, in the district court, where as here State Committee's determinations of forfeitures of payments under producer contracts have been rejected and set aside, however, precludes assessment of penalties under that section, the language thereof being *"in addition to any amount required to be forfeited"* (emphasis supplied) and the section compels that conclusion.

"Knowingly and willfully", without such restrictive interpretation, would be controlling in all matters relating to penalties under that section. Extent of them would be of no significance. Penalty differentiations could not be made or even permitted. A small payment by way of adjustment on a

slight infraction of the rules, conceivably could in the case of a large operator, result in penalties disproportionate and unfair. "Knowingly and willfully", as a controlling device is not intended by the language of this section. It may be applied, but only in cases where the evidence shows that the violations were knowingly and willfully made and where forfeiture of all payments are found by the court to be warranted.

The court concludes that the demands of the plaintiff in both cases should be and they are hereby granted, and the Government's counterclaim for judgment for the amount of the penalties assessed by the State Committee in both cases is hereby denied.