Lloyd GOERING, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 872.

United States District Court
N. D. Iowa, E. D.

Feb. 8, 1960.

Edward P. Donohue, New Hampton, Iowa, for plaintiff.

William R. Crary, Asst. U. S. Dist. Atty., Sioux City, Iowa, for defendant.

GRAVEN, District Judge.

On the 1st day of February, 1960, at the Federal Court House at Waterloo, Iowa, the above-entitled case came on for trial before the Court. Edward P. Donohue appeared as attorney for the plaintiff. William R. Crary, Assistant United States District Attorney, appeared for the defendant. On that day the parties presented their evidence, counsel made their arguments, and the case was submitted to the Court and by it taken under advisement. Now, to wit, on this 8th day of February, 1960, the Court, being fully advised in the premises, makes and enters the following Findings of Fact, Conclusions of Law, and Order for Judgment.

Findings of Fact

1. The plaintiff was and is the owner of a 120-acre farm in Bremer County, Iowa. For several years he has resided on the farm and operated it. In addition to operating the farm, he managed a lumberyard at Sumner, Iowa.

2. On or about May 13th, 1958, the plaintiff entered into a Soil Bank 1958 Acreage Reserve Agreement with the Secretary of Agriculture of the United States of America under the provisions of Section 1831, Title 7 U.S.C.A. Matters in connection with such Agreements are handled in behalf of the Secretary by County and State Agricultural Stabilization and Conservation Committees. The plaintiff's matters in connection with his Acreage Reserve Agreement were handled by the Bremer County ASC Committee and the State ASC Committee.

3. Section 1811, Title 7 U.S.C.A., provides as follows:

"Any producer who knowingly and willfully grazes or harvests any crop from any acreage in violation of a contract entered into under section 1821 or 1831 of this title shall be subject to a civil penalty equal to 50 per centum of the compensation payable for compliance with such contract for the year in which the violation occurs. Such penalty shall be in addition to any amounts required to be forfeited or refunded under the provisions of such contract, and shall be recoverable in a civil suit brought in the name of the United States."

Section 485.286 of the Code of Federal Regulations relating to Soil Bank Acreage Reserve Agreements provides, in part, as follows:

"Where the acreage reserve is grazed in violation of an Acreage Reserve Agreement, the amount of the forfeiture or refund shall be as specified below in this section.

"(a) If the acreage reserve is knowingly and willfully grazed by

any person connected with the farm, * * * the entire amount payable or paid to the operator shall be forfeited or refunded. * * * (In addition to the forfeiture or refund prescribed in this subpart, section 123 of the Soil Bank Act provides for a civil penalty for knowingly and willfully grazing any acreage in violation of an Acreage Reserve Agreement.)

"(b) If the acreage reserve is grazed as the result of gross negligence on the part of any person connected with the farm, * * * compensation shall be forfeited or refunded to the same extent and in the same manner as prescribed in paragraph (a) of this section for knowingly and willfully grazing the acreage reserve."

Section B(2) of the Acreage Reserve Agreement entered into by the plaintiff prohibited the grazing of any of the land placed in acreage reserve between the date of said Agreement and January 1, 1959.

4. The plaintiff's farm is rectangular in shape. The farm buildings and farmyard are situated on the west side of the farm near its north-south center. A fenced lane extends from the farmyard easterly to the farm's east boundary. To the north of the buildings, farmyard and lane are three tracts of land. Proceeding from west to east, there is first a 5.2-acre tract, next a 45-acre tract, and then a 22.1-acre tract. To the south of the lane there is a 40-acre tract. In 1958 the 45-acre tract was hay land; the 40-acre tract was planted to soybeans; and the 5.2-acre tract and the 22.1-acre tract were placed in the Acreage Reserve Agreement referred to. At the farmyard there was a gate which opened into the lane. Immediately to the northeast of that gate there was a gate which opened into the 45-acre tract, and immediately to the southeast of the same gate there was a gate which opened into the 40-acre soybean field.

5. An adequate woven wire fence running north and south separated the 45-acre hayfield tract from the 22.1-acre acreage reserve tract. At the south end of the 22.1-acre acreage reserve tract there was a two-strand wire fence which separated the 22.1-acre acreage reserve tract from the lane. Prior to sometime in November, 1958, there was no fence separating the 45-acre hayfield tract from the 5.2-acre acreage reserve tract.

6. Under the Acreage Reserve Agreement the plaintiff was to receive the sum of $1,365 as soil bank payments for the two tracts placed in acreage reserve. In the spring of 1958 the plaintiff planted the two tracts to a combination of oats, alfalfa, and brome grass. Under the regulations relating to acreage reserve tracts, the plaintiff was required to clip the crops on the two tracts so as to prevent them from attaining maturity. The plaintiff did so. On July 2d, 1958, the plaintiff signed a Certificate of Performance and filed it with the ASC. That Certificate contains the following statement: "I understand that nothing may be grazed or harvested from the area that I have designated as my acreage reserve tract." In that Certificate he asked that his performance of his Agreement be checked so that payment of the amount specified therein might be made to him. The County ASC Committee caused his performance of the Agreement to be checked. The plaintiff was found to be in compliance with his Agreement. On September 24, 1958, the plaintiff was paid the sum of $1,365 specified in his Agreement.

7. In 1958 alfalfa and brome grass were grown on the 45-acre hayfield tract. During the summer of 1958 a first cutting was made. Thereafter alfalfa and brome grass continued to grow during the remainder of the growing season. No second cutting was made, and by the fall of 1958 there was a substantial growth of alfalfa and brome grass available as forage on the tract. Following the clippings of the crops planted on the acreage reserve tracts, there was some

further growth of the alfalfa and brome grass that had been planted on them which could be foraged. That alfalfa and brome grass were interspersed with oat stubble and ragweed. The ragweed had no forage value and the oat stubble very little forage value. By October 18, 1958, the forage on the 45-acre tract and the two acreage reserve tracts had been subjected to frosts.

8. Prior to October 11, 1958, there was no livestock on the farm. On October 11, 1958, the plaintiff purchased 59 head of Hereford feeding cattle which averaged around 550 pounds each. The plaintiff put the cattle in the farmyard and kept them there until October 18, 1958, feeding them entirely on grain and hay. On October 18, 1958, he desired to have the cattle forage on the 45-acre hayfield tract and the soybean tract. Because of the frosts and the lateness of the season, forage, in general, had deteriorated in nutritional value. The plaintiff planned to and did continue to feed the cattle grain and hay while they were on fall forage.

9. On October 18, 1958, the plaintiff opened the gate from the farmyard to the lane, the gate from the lane into the 45-acre hayfield, and the gate from the lane into the 40-acre soybean tract. As heretofore noted, there was no fence between the 5.2-acre acreage reserve tract and the 45-acre hayfield tract, and, in reality, the two constituted one 50-acre open tract. The action of the plaintiff in turning the cattle into the 45-acre hayfield tract when there was no fence between it and the 5.2-acre acreage reserve tract is difficult to evaluate. There was sufficient forage on the 45-acre hayfield tract for the cattle during the fall. The plaintiff had no particular need for the forage on the 5.2-acre acreage reserve tract. By turning the cattle into the 45-acre hayfield tract under the circumstances, he risked losing $1,365 in soil bank payments and possibly incurring an additional 50 per cent penalty in exchange for a small amount of frost-bitten, late season forage for which he had no particular need. Sometime prior to October 18, 1958, one wire had been laid on the ground on the line between the 5.2-acre acreage reserve tract and the 45-acre hayfield tract. The plaintiff did plan to construct a fence on that line, and he was so planning at the time he turned the cattle into the 45-acre hayfield tract. However, at the time he turned the cattle into the 45-acre tract he thought that in view of the large amount of forage on that tract, the cattle would do very little foraging on the 5.2-acre tract by the time he got the fence constructed. The plaintiff also knew that the fence between the lane and the 22.1-acre acreage reserve tract was inadequate to restrain cattle from going from the lane into that tract if they so minded. Not many so minded, the evident reason being that ample forage was available without so doing. The plaintiff's thinking as to the repair of the fence between the lane and the 22.1-acre tract was similar to his thinking in regard to the completion of the fence between the 5.2-acre acreage reserve tract and the 45-acre hayfield tract.

10. On or about November 5, 1958, it was reported to the County ASC Committee that the plaintiff was grazing acreage reserve land, and on or about that date he was contacted concerning that matter. On November 12, 1958, the plaintiff met with the Bremer County ASC Committee in regard to the matter. The plaintiff admitted that there had been some grazing of acreage reserve land. He and the County Committee then discussed the matter of settlement. The plaintiff agreed to remedy the fence situation and offered to settle for $30. The County ASC Committee voted to recommend to the State ASC Committee that the matter be settled for $60. The State ASC Committee refused to approve the recommendation of the County ASC Committee that the matter be settled for $60. On or about November 12, 1958— the exact time is not clear—the plaintiff installed a one-strand electrified wire fence on the line between the 5.2-acre

acreage reserve tract and the 45-acre tract. Later—the exact time is not clear—he installed another strand of electrified wire on that line. At a time which does not exactly appear, the plaintiff made repairs to the fence between the lane and the 22.1-acre acreage reserve tract. It appears that after the plaintiff added the second strand of electrified wire to the division fence between the 5.2-acre tract and the 45-acre tract and repaired the fence between the lane and the 22.1-acre tract, no cattle entered upon the 5.2-acre tract or the 22.1-acre tract. On January 7, 1959, the plaintiff again met with the County ASC Committee. The matter of settlement was again discussed. The County Committee voted to recommend to the State ASC Committee that the matter be settled for $200. This sum was not based on any established amount of grazing, but constituted a proposed compromise lump sum settlement. The State ASC Committee refused to approve the proposed settlement.

11. The State ASC Committee then proceeded to hold a hearing on the matter of the plaintiff's violation of his Acreage Reserve Agreement. On February 10, 1959, at a meeting of which the plaintiff was notified and which he attended, the Committee determined that the plaintiff had violated his Acreage Reserve Agreement by grazing acreage reserve land covered by it. The Committee determined that the plaintiff should refund the $1,365 soil bank payment with interest thereon at six per cent from February 2, 1959. The Committee further determined that the plaintiff had knowingly and willfully grazed land which he had placed in acreage reserve and that he was liable for a civil penalty in the sum of $682.50. On May 2, 1959, the plaintiff filed his complaint herein asking that the determinations of the State ASC Committee be reviewed in accordance with the provisions of Section 1831 (d), Title 7 U.S.C.A. The defendant filed an answer and counterclaim. In its counterclaim the defendant asked judgment against the plaintiff for the amount of the soil bank payment made to him in the sum of $1,365, together with interest. It also asked judgment against him for a civil penalty in the amount of $682.-50.

12. In this case there is presented the question whether the plaintiff knowingly and willfully grazed land which was covered by his Acreage Reserve Agreement. There is also presented the question whether the plaintiff's grazing of the acreage reserve was the result of gross negligence.

The feature of nocturnal or other surreptitious grazing is not present in this case. There was no attempt on the part of the plaintiff to disguise or conceal matters in connection with the grazing. His attitude was not that of defiance. As heretofore noted, the condition of the fence between the lane and the 22.1-acre acreage reserve tract was such that the cattle could gain entrance to the 22.1-acre tract. It appears that only a few of the cattle did so, and that was on infrequent occasions. There was no evidence that the forage on the 22.1-acre acreage reserve tract was in fact grazed by the cattle. It is clear that part of the 5.2-acre acreage reserve tract was grazed to some extent.

13. The plaintiff did knowingly graze the 5.2-acre acreage reserve tract. The Court is of the view and finds that the plaintiff did not willfully graze that tract. As heretofore noted, the forage on that tract was of the frostbitten, late season variety of which the plaintiff had no need. It is the view and the finding of the Court that the said grazing was occasioned not because of any wrongful intention or willfulness on the part of the plaintiff but because of his dilatoriness and procrastination. While the conduct of the plaintiff was lacking in willfulness, it is the view and finding of the Court that his dilatoriness and procrastination in attending to the fencing was such as to amount to gross negligence on his part.

Under the applicable regulations where grazing of acreage reserve land is occasioned by the gross negligence of the

person who placed such land in such reserve, such person forfeits the entire acreage reserve payment. It was the view of the County ASC Committee that the forfeiting of the plaintiff's entire acreage reserve payment would be unduly harsh. However, neither the County ASC Committee nor this Court may specify a forfeiture of a lesser amount.

It is the finding of the Court that the grazing in question was the result of gross negligence on the part of the plaintiff. Because of such negligence, the plaintiff forfeited the entire $1,365 soil bank payment.

While the loss of the entire payment might appear to be a very heavy loss in view of the amount and character of the grazing involved, the effect on the general soil bank program of the plaintiff openly grazing land which he had placed in the soil bank program could hardly be other than detrimental.

Conclusions of Law

1. That this Court has jurisdiction of the subject matter of this action and the parties to it.

2. That the plaintiff, because of his gross negligence in the matter of grazing land placed by him in acreage reserve under his Soil Bank 1958 Acreage Reserve Agreement, forfeited the payment of $1,365 made to him thereunder.

3. That the plaintiff is not legally liable to the defendant for the civil penalty provided by Section 1811, Title 7, U.S.C.A.

Order for Judgment

It Is Hereby Ordered that judgment shall be entered:

(1) against the plaintiff and in favor of the defendant in the sum of $1,365 with interest thereon at the rate of 6% per annum from February 2d, 1959, on the claim of the defendant for the soil bank payment;

(2) in favor of the plaintiff on the claim of the defendant for civil penalty;

(3) directing that no costs be taxed in favor of either party.