**UNITED STATES of America,**
**Appellant,**

v.

**Thomas J. MAXWELL, Appellee**
**(two cases).**

**Nos. 16338, 16339.**

United States Court of Appeals
Eighth Circuit.

April 12, 1960.

207

Anthony L. Mondello, Atty., Civil Division, Dept. of Justice, Washington, D. C., for appellant.

Kenneth T. Wilson, Sioux City, Iowa, for appellee.

Before GARDNER, VOGEL and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

United States of America appeals from adverse judgments entered in these two consolidated cases brought under the provisions of the Soil Bank Act, 7 U.S.C.A. § 1801 et seq.[1]

Plaintiff Maxwell owned and operated a 175 acre farm in Plymouth County, Iowa. In the spring of 1957 he entered into contracts to place 54 acres of his land under the conservation reserve program (hereinafter called C. R.) for a period of five years, pursuant to sections 1831–1837, and 39.1 acres in the acreage reserve program (hereinafter called A. R.) for a period of one year, under the provisions of sections 1821–1824. As compensation for compliance Maxwell is to receive $866.88 annually on the C. R. contract and $1407.60 on the A. R. contract.

Maxwell was charged with violations of statutory and contractual prohibition of grazing upon the A. R. and C. R. reserves during the year 1957. Hearings upon the alleged violations in accordance with the procedure prescribed by the

[1] Statutory citations in this opinion, unless otherwise indicated, are to sections of the Soil Bank Act, 7 U.S.C.A. § 1801 et seq. The Soil Bank Act collectively will be referred to as the Act.

statutes and regulations were had before the County Committee and later the State Committee. Maxwell appeared at and participated in such hearings.

At the conclusion of the hearing, the State Agricultural Stabilization and Conservation Committee determined that the A. R. and C. R. land had been knowingly and wilfully grazed and that by reason thereof compensation payable in the amount of $866.88 under the C. R. contract is forfeited and a civil penalty of 50%, or $433.44, is imposed; and that compensation of $1407.60 under the A. R. contract is forfeited and a civil penalty of 50%, amounting to $703.80, is imposed.

Section 1831(d) by its terms applicable to C. R. contracts and by 1821(a) (i) made applicable to A. R. contracts, provides in part:

"A contract shall not be terminated under paragraph (6) of subsection (a) of this section unless the nature of the violation is such as to defeat or substantially impair the purposes of the contract."

The statute then makes provision for administrative hearings before county and state committees upon the issue of whether there has been a violation which would warrant termination of a contract. If the State Committee finds a violation which warrants the termination, the producer is given a right to a judicial review of such termination. The statute then provides:

"The action in the United States district court shall be a trial de novo to determine whether there has been a violation which would warrant termination of the contract."

All required administrative procedures were followed. Plaintiff instituted these two actions for judicial review of the State Committee's determination, in accord with the provisions of section 1831.

One action pertains to the C. R. contract; the other to the A. R. contract. The trial court acquired jurisdiction to review the forfeiture determination made by the State Committee.

The situation relative to the recovery of civil penalties is somewhat different. Neither the Secretary nor his representative is given power to adjudicate liability for civil penalties. Section 1811, relating to the enforcement of civil penalties, reads:

"Any producer who knowingly and willfully grazes or harvests any crop from any acreage in violation of a contract entered into under section 1821 or 1831 of this title shall be subject to a civil penalty equal to 50 per centum of the compensation payable for compliance with such contract for the year in which the violation occurs. Such penalty shall be in addition to any amounts required to be forfeited or refunded under the provisions of such contract, and shall be recoverable in a civil suit brought in the name of the United States."

The statute just quoted clearly vests jurisdiction to enforce the penalty in the district court. The State Committee exceeded its jurisdiction in attempting to assess penalties. The Committee's determination as to penalties is without any legal significance.

United States has filed counterclaims to enforce the penalties. Issue has been joined upon the counterclaims. The district court, by virtue of the counterclaims, acquired jurisdiction to consider the penalty issue. These cases were consolidated and tried to the court. Separate judgments were entered, determining that there had been no substantial violation of either the A. R. or C. R. contracts, such as would warrant the termination of the contracts, and hence that there was no legal basis for the forfeiture and penalties imposed by the Committee. The court set aside the forfeiture determinations of the Committee, ordered payment of the benefits provided by the contracts to the plaintiff, and dismissed the counterclaims for civil penalties. These appeals are from the final judgments entered.

The rights of the parties under the C. R. and A. R. contracts are substantially

the same. No material difference as to applicable law so far as it pertains to the legal problems here presented has been pointed out or discovered by us. There is no material difference in the controlling facts. The trial court filed a memorandum opinion, reported at Maxwell v. Benson, D.C., 173 F.Supp. 75, wherein he sets out the material provisions of the contracts, the applicable statutes, the pertinent facts and the controlling legal principles.

United States urges that the cases should be reversed for the following reasons:

1. The district court erred in not expressly finding that plaintiff had "knowingly and willfully" grazed the reserved acres.

2. The district court erred in not finding that the violations were such as would warrant termination of the contracts.

3. The district court erred in denying the claim of the United States for penalties under 7 U.S.C.A. § 1811.

4. The district court erred in ordering release of the forfeited funds, and in not returning the cases to the State Committee for further adjustment proceedings.

The asserted errors will be considered in the order stated.

These cases were tried to the court.

Questions relating to the credibility of witnesses are presented. Findings of fact made by a trial judge shall not be set aside unless clearly erroneous. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. We have frequently stated and applied the well established rule to the effect that:

"In a nonjury case, this Court may not set aside a finding of fact of a trial court unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law." Neely v. Boland Manufacturing Co., 8 Cir., 274 F.2d 195, 201.

Section 1831(d) provides for a trial de novo in the district court. Such provision negatives any thought that the trial court is bound to give any presumptive force to the findings of the State Committee. The responsibility for determining disputed fact issues is placed squarely upon the trial court. The record shows that the evidence before the court is more extensive and differs in a number of material respects from the record made before the Committee. We observe that the County Committee, some of whose members were personally familiar with the facts bearing upon the alleged grazing violation, made no determination that the violation was knowing and wilful but instead determined that the violation was due "mainly to gross negligence." The County Committee recommended that the A. R. contract be paid in full, but that the C. R. payment should be forfeited, the Committee stating that they had determined "this amount as equal to the value of grazing on both A. R. and C. R., and compensation for expense of checking and reviewing this violation."

The State Committee found the grazing violation to have been knowingly and wilfully committed. The State Committee made no express finding or determination that the violations found were such as to defeat or substantially impair the purpose of the contract, nor did it find that the alleged violations warranted the termination of the contracts. The trial court did not expressly make a finding on whether plaintiff's action with reference to the grazing of the reserve acres was knowing and wilful. A fair reading of the opinion as a whole satisfies us that the court did not regard the violations as wilful. Moreover, it is very doubtful whether there is any substantial evidence to support a finding of wilful violation. It appears incredible to us that the plaintiff, who had 45 acres of pasture in the early summer for the exclusive use of six colts, would wilfully permit them to graze upon the reserve acres.

The trial court held that neither the A. R. nor C. R. contract could be terminated unless the violation of the contract "is such as to defeat or substantially impair its purposes and forfeiture of contract payments without a finding of such a violation is contrary to the terms of the producer's contract and a nullity as a matter of law, being without any authority in the statute. 7 U.S.C.A. §§ 1821(a) (ii) and 1831(d)." 173 F. Supp. at page 80.

Pursuant to section 1821(i) (ii), the following provisions were made a part of the A. R. contract:

"(i) In the event that the Secretary determines that there has been a violation of the contract at any stage during the time such producer has control of the farm and that such violation is of such a substantial nature as to warrant termination of the contract, to forfeit all rights to payments or grants under the contract, and to refund to the United States all payments and grants received by him thereunder: *Provided, however,* That the provisions of section 1831(d) of this title shall apply to the termination of any contract hereunder.

"(ii) In the event that the Secretary determines that there has been a violation of the contract but that such violation is of such a nature as not to warrant termination of the contract, to accept such payment adjustments, forfeit such benefits, and make such refunds to the United States of payments and benefits received by him, under the contract, as the Secretary may determine to be appropriate."

Similar requirements as to the C. R. contract are set out in 1831(a) (6) (A), (B). Section 1831(d), applicable to both A. R. and C. R. contracts, specifically provides:

"A contract shall not be terminated under paragraph (6) of subsection (a) of this section unless the nature of the violation is such as to defeat or substantially impair the purposes of the contract."

The legislative intent as expressed in the foregoing statutes and the Act as a whole clearly appears to be that there shall be no forfeiture of the contract payments unless there has been a violation of such a substantial nature as to warrant a termination of the contract, and that a termination is authorized only when the violation is such as to defeat or substantially impair the purposes of the contract. Lesser violations are to be adjusted as provided by 1821(ii), and 1831(a) (6) (B).

It is entirely true that the Act authorizes the Secretary to promulgate regulations he deems necessary to carry out the provisions of the Act. Section 1812. The Secretary did set up Regulation 485.286 pertaining to grazing the A. R. This regulation provides for the forfeiture of the entire contract benefits in event that the grazing was knowing or wilful or the result of gross negligence, without any reference to the substantiality of the violation. Regulation 485.-294 similarly provides for the forfeiture of C. R. benefits for grazing violations. Regulation 485.280 provides that any violation which the State Committee determines requires a forfeiture of all payments shall be regarded as a violation which warrants the termination of the contract.

Promulgation of regulations to aid in the carrying out of a statutory program is necessary and desirable. We have no quarrel with the authorities holding that regulations authorized by and consistent with statutes are binding and that such regulations prescribed by an administrative authority are entitled to great weight. It is established law that legislative power rests in Congress and that the will of Congress as unambiguously expressed in a properly enacted statute cannot be amended or altered by regulation. Regulations are entitled to consideration in construing an ambiguous statute. However, a regulation to the extent it is in direct variance

with an unambiguous statutory provision is clearly void. Helvering v. Oregon Mutual Life Ins. Co., 311 U.S. 267, 61 S.Ct. 207, 85 L.Ed. 180; Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528; United States v. United Verde Copper Co., 196 U.S. 207, 25 S.Ct. 222, 49 L.Ed. 449; Boykin v. Commissioner, 8 Cir., 260 F.2d 249; 73 C.J.S. Public Administrative Bodies and Procedure § 94, pp. 414–415.

The controlling rule is stated in the Manhattan General Equipment Co., case, supra, as follows:

"The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law, for no such power can be delegated by Congress, but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity." 297 U.S. at page 134, 56 S.Ct. at page 400.

█ The trial court, in the light of the clear, unambiguous statutory provisions hereinabove referred to, properly determined that the A. R. and C. R. contracts could be terminated and the contract benefits due forfeited only for violations such as defeat or substantially impair the purposes of the contract. The trial judge, in applying the facts of this case to the statutes as he properly construed them, states:

"Inconsequential, from the viewpoint of what was sought to be achieved under the contracts is a fitting description of the incidents this evidence discloses. These are the slight and trivial ones to be settled by adjustments in payment as prescribed by specific provisions in the Act, 7 U.S.C.A. § 1821(a) (ii), and not by forfeitures." 173 F. Supp. at page 81.

The purpose of the Act is set out in section 1801. While we believe the government has stated the purpose of the Act somewhat narrowly, we can, for the purpose of this case, accept the statement as made in the government's brief, reading:

"The Soil Bank Act is designed to avoid the accumulation of excessive supplies of agricultural commodities, among other objectives, and its general provisions state its aim to assist farmers to divert a portion of their cropland from production of such commodities, and to carry out a program of soil, water, forest and wildlife conservation."

█ We are convinced that the trial court was completely justified in concluding that the asserted violations were trivial and that they did not defeat or substantially impair the purposes of the A. R. and C. R. contracts.

We have examined the record with care and are abundantly satisfied that the court's conclusion just stated is supported by substantial evidence. Since the court found for the plaintiff on the fact issue, the evidence must be viewed in the light most favorable to the plaintiff. However, at worst, six colts which had exclusive use of a 45 acre pasture may have strayed onto the reserve acres on a few occasions before July 15. At that time the cover crop which had been planted late was only four inches high. Four colts were sold by the plaintiff in May but the purchaser, in violation of his agreement, delayed picking them up until early July. After that date, plaintiff had no more than three horses or colts on his farm. Plaintiff asserts that he intended to keep all of his horses out of the reserve acres after June 15, and we can perceive no reason why this statement of plaintiff should not be entitled to credit. A neighbor, who frequently worked in fields adjoining the reserve acres, saw no horses or colts upon the reserve acres after mid July.

Plaintiff had a full time job in the stock yards and was away from his farm

a good deal of the time. He was on a business trip from mid June until shortly after July 4. Plaintiff acquired an interest in a substantial number of cattle in July. These cattle were pastured in plaintiff's pasture adjoining the reserve acres and in a neighbor's pasture. There is no evidence that the cattle ever encroached upon the reserve acres.

The statutory prohibition is against grazing. Prior to July there was little if anything growing upon the reserve acres upon which to graze. There is no evidence from any witness of any visible effect upon the reserve acres caused by any grazing. The trial court, in its opinion, set out dictionary definitions of grazing to the effect that grazing means feeding on growing herbage. There is serious doubt whether there is any substantial proof of any grazing. Any nourishment which the colts might have obtained from the reserve acres would appear to be extremely insignificant. In any event, it is entirely clear that there is no proof that any grazing that might have taken place on the reserve acres went to such an extent as to defeat or impair the purposes or objectives of the Soil Bank Act.

The United States insists that the necessity of proving substantiality of the violation would create serious difficulties in the administration of the Act. If this be true, relief must be obtained from Congress through appropriate legislation. Courts can only interpret the law as written.

We now reach the United States' contention that the court erred in dismissing the counterclaims for collection of penalties equal to 50% of the benefits provided by the A. R. and C. R. contracts. The penalties are claimed under section 1811 heretofore quoted. The trial court did not expressly pass on the question of whether the alleged violations were knowing or wilful. The court held that section 1811 authorized the assessment of a penalty only in event the basis for forfeiture of the contract benefits exists and that since the alleged violations did not warrant a forfeiture, they could not be made the basis for imposing penalties.

The court placed some reliance on the fact that section 1811 provides that the penalties shall be "in addition to any amount required to be forfeited." United States contends that our decision in United States v. Rainwater, 8 Cir., 244 F.2d 27, precludes any reliance by the trial court upon such language. Rainwater is distinguishable from the present case in a number of respects. The violation relied upon there was a criminal offense. Here no criminal offense is involved. In Rainwater, the penalty and damages were provided for in the same statute. Here the forfeitures are provided in statutes separate from the penalty statute. Moreover, in Rainwater we actually determined that the plaintiff had claimed damages as well as a penalty.

We believe that it may fairly be said that the statutory language relied upon by the trial court is ambiguous. In order to ascertain the legislative intention with reference to the imposition of penalties, the group of statutes creating the soil bank program must be construed as a whole. Both the forfeiture and penalty provisions are means adopted for enforcing compliance. It is inconceivable to us that Congress after carefully and clearly providing that benefit payments could be forfeited for substantial violations warranting termination of the contract, and providing that lesser violations be compensated for by adjustment, would intend the language used in section 1811 to mandatorily impose substantial, inflexible penalties for minor violations.

Under the United States' interpretation of section 1811, if the plaintiff knowingly and wilfully permitted one colt to graze upon the reserve land for one minute, plaintiff would be subject to a mandatory penalty here of over $1100. It would be noted that a stated purpose of the Act is to increase farmers' income. Section 1801.

The Act as a whole reflects Congress' intention to impose the drastic penalty provision only in cases of substantial violations which defeat or substantially impair the purposes of the A. R. and C. R. contracts.

We can find no cases imposing a civil penalty in instances where forfeiture was not established. White v. United States, D.C.W.D.Tenn., 183 F.Supp. 591, follows the interpretation here made by the trial court. In Goering v. United States, D.C.N.D.Iowa, 183 F.Supp. 170, Judge Graven, although finding the violation justified a forfeiture of benefits, determined that the grazing was not wilful and disallowed the penalty on such basis.

■ Moreover, if the statute can possibly be interpreted to justify inflicting the penalty for any wilful violation, however slight, the burden would be upon the government to establish that the violation was wilful. For reasons heretofore stated, we do not believe that this record contains substantial evidence which would support a finding of wilfulness.

■ There is merit to the United States' contention that the court erred in directing that the contract benefits be paid to plaintiff. As we read section 1831(d), the only issue to be reviewed by the court is the validity of the State Committee's determination that a violation has been established warranting the termination of the contract and hence, the forfeiture. No express authority is conferred by this or any other statute called to our attention for the entry of judgment for benefit payments due. There appears to be an entirely valid basis for the statutory limitation of review to the issue of the validity of the forfeiture determination actually made by the State Committee. The determination here pertained to alleged violations occurring early in the year, and not later than the first of August. It is entirely possible that a producer might subsequent to such time violate a contract and the statutes in other respects, such as by harvesting the crop, by subsequent grazing, or by planting prohibited crops elsewhere upon his farm.

It would also appear that the right to make adjustments for violations which do not defeat the purpose of the Act remain in the County and State Committees. Elliott v. United States, D.C.Neb., 179 F.Supp. 758, and Inman v. United States, D.C.S.D.Tex., 172 F.Supp. 841, support the view that the scope of review and jurisdiction conferred upon the courts by section 1831 is very limited.

In Inman v. United States, the court at page 847 of 172 F.Supp. states:

"Declaratory judgment to that effect and setting aside the forfeiture will be entered. This does not authorize the Court, however, to enter judgment for the forfeited compensation. Section 1831(d), under which the action is brought, does not so provide. It provides for a judicial review only as to 'whether there has been a violation which would warrant *termination* of the contract. Counsel on both sides here have proceeded on the assumption that the Court has power to award judgment for all compensation forfeited if it finds the violation was not of such a substantial nature as to warrant termination; but counsel have not cited any statutory or other authority giving the court such jurisdiction or power."

We find no statutory basis for a remand of this case to the State Committee for adjustment proceedings. No jurisdiction is conferred upon the courts to review adjustment proceedings. It would appear that the County and State Committees have statutory authority to make any adjustments in plaintiff's compensation authorized by the Act and that this court has no jurisdiction in these actions to add to or detract from such statutory powers.

The only issues properly within the jurisdiction of the trial court relate to the validity of the forfeiture as determined by the State Committee, and the

dismissal of the counterclaims. We are satisfied that the trial court properly set aside the forfeiture determinations and properly dismissed the counterclaims, and to this extent the judgments of the trial court are affirmed. The judgments entered are modified by deleting therefrom the direction that the plaintiff be paid the benefits provided by the C. R. and A. R. contracts, for the reason that the judgments in this respect went beyond the court's jurisdiction in these actions.