**Don INMAN, Plaintiff**

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 1209.**

United States District Court
S. D. Texas,
Brownsville Division.

March 27, 1959.

George W. Storter, Brownsville, Tex., for plaintiff.

William B. Butler, U. S. Atty., James E. Ross, Asst. U. S. Atty., Houston, Tex., for defendant.

ALLRED, District Judge.

This is a case of first impression under the Soil Bank Program, a part of the Agricultural Act of 1956. It is brought under 7 U.S.C.A. § 1831(d) which authorizes *termination* of a contract for soil bank payments administratively after written notice and a hearing before a county committee, with the right to review by the State Committee. The section further provides for a judicial determination in an action filed by an aggrieved producer in the district court, the trial being "de novo to determine whether there has been a violation which would warrant *termination* of the contract * * * ".[1]

Plaintiff alleges the making of a cotton acreage reserve agreement with the Secretary of Agriculture for the year 1957; that he has done all things necessary to be entitled to $2,507.40 compensation but that a determination was made by the State committee on January 9, 1958, that the compensation payable under the agreement should be forfeited for an alleged violation of the agreement. He asks for judgment for this sum of $2,507.40.

Plaintiff put 39.9 acres of land in Cameron County under the Soil Bank Acreage Reserve program for the year 1957. He entered into a written contract with the Secretary of Agriculture which provided, among other things, (1) that it should be subject to all regulations promulgated by the Secretary; (2) that "No crop shall be harvested from the acreage reserve * * * and the acreage reserve shall not be grazed * * * ".

Plaintiff lived at Burkburnett, Wichita County, Texas, some 650 miles from the land in question. Previously he had planted cotton on it and farmed it from afar, making such trips to the Rio Grande Valley as were necessary. The land had been "bedded" (listed and rowed) so as to let it lie idle through the winter when plaintiff signed the agreement placing it under the soil bank program. It was unfenced and adjoined lands belonging to plaintiff's family which also were put in the reserve program.

Plaintiff did not hire or arrange for anyone to look after the land to see that it was not farmed, harvested or trespassed upon. He remained at Burkburnett until after June, 1957, when he received a letter from the Cameron County Committee stating that there had been a violation; that a man named Jagou had harvested Johnson grass hay[2] from the land and some one had grazed one tract. It has been stipulated that this was done in both instances by a trespasser. It was without plaintiff's knowledge or consent.

Upon pretrial it was also stipulated that "Plaintiff's claim for $2,507.40 is liquidated and was denied by the Cameron County and State of Texas A.S.L. Committees for the reason that both of these committees determined the violations were the result of the plaintiff's 'Gross Negligence' as that term is used in the applicable regulations." These regulations are stipulated to be Sections 485.285 and 485.286 issued on April 5, 1957, 22 F.R. 2411. These sections are identical in terms except that 485.285 deals with *harvesting from*, and 485.286 deals with *grazing*, the acreage reserve. Their provisions will be set out hereafter.

Plaintiff contends, first, that these regulations and others prescribed by the Secretary go farther than is permissible under the Act; and second, that the facts here do not justify a forfeiture under the law, the regulations or the contract. This Court holds that neither the regulations nor the contract exceed the authority conferred by law upon the Secretary; but that the admitted and undisputed facts do not warrant *termination*

1. Emphasis supplied throughout this memorandum unless otherwise indicated.

2. The trespasser may have harvested enough Johnson grass to amount to 400 bales, worth about $200. Apparently the Johnson grass was "volunteer"—not planted.

of the contract which, as will be seen, is necessary before there can be a *forfeiture* of *all* compensation due a producer.

The Acreage Reserve Program was set up in Subchapter II of the Soil Bank Program Inaugurated by Congress in the Act of May 28, 1956, c. 327, Title 1, § 102, 70 Stat. 188, 7 U.S.C.A. 1801 et seq. Subsection (a) of Section 1821 authorizes and directs the Secretary of Agriculture, among other things, to formulate and carry out an acreage reserve program for certain crops, including cotton, for the years 1956 through 1959, under which producers shall be compensated for reducing their acreage; that to be eligible for such compensation the producer "(1) shall reduce his acreage * * * *within such limits as the Secretary may prescribe* * * * and (3) shall not harvest any crop from, or graze, the reserve acreage unless * * * *"* (then follows an exception not pertinent here). It further provides that: "The acreage reserve program *may include such terms and conditions*, in addition to those specifically provided for herein, * * * *as the Secretary determines are desirable* to effectuate the purpose of this chapter and to facilitate the practical administration of the acreage reserve program;" that "Before any producer is entitled to receive any compensation for participating in the acreage reserve program, *he must first enter into a contract* with the Secretary, which contract, *in addition to such other terms and conditions as may be prescribed by the Secretary,* shall contain provisions by which the producer shall agree:

"(i) In the event that the Secretary determines that there has been a violation of the contract at any stage during the time such producer has control of the farm and *that such violation is of such a substantial* nature as to warrant termination of the contract, to forfeit all rights to payments or grants under the contract, and to refund to the United States all payments and grants received by him thereunder: Provided, however, That the provisions of section 1831(d) of this title shall apply to the *termination* of any contract hereunder.

"(ii) In the event that the Secretary determines that there has been a violation of the contract but that such a violation is of such a nature as not to warrant termination of the contract, to accept such payment adjustments, forfeit such benefits, and make such refunds to the United States of payments and benefits received by him, under the contract, as the Secretary may determine to be appropriate."

Another section of the statute, (section 1831(a) of Title 7), also provides that, to effectuate the purposes of the act, the Secretary is authorized to enter into contracts wherein the producer should agree, among other things, to the same conditions (and in almost identical language) set out in paragraphs (i) and (ii) of section 1821. Section 1831(a) (7) also contained the following provision, to which the producer should agree:

(7) *To such additional provisions as the Secretary determines are desirable and includes in the contract* to effectuate the purposes of this chapter and to facilitate the practical administration of the conservation reserve program, including provisions relating to control of noxious weeds."

Prior to execution of the contract involved here the Secretary had promulgated regulations [3] (1) that "no crop shall be harvested from the acreage reserve * * * *" and (2) [4] that "The acreage reserve shall not be grazed * * * ;" and (3) [5] incorporating almost verbatim the provisions set out in paragraphs (i) and (ii) of section 1821 above, with reference to the Secretary's determination that a violation was of such a substan-

---

**3.** Section 485.214(b), 1957 acreage reserve regulations, 21 FR 10449.

**4.** Section 485.214(c), same.

**5.** Sections 485.233(a) and (b), same.

tial nature as to warrant termination, etc.

Plaintiff's contract, signed by him on March 7, 1957, and by the Secretary's representative on March 26, 1957, also incorporated in almost identical language the same provisions.

■ Plaintiff's first contention as to the regulations and the contract going farther than the statute is that while the statute provides that the *producer* shall not harvest any crop from or graze, the reserve acreage [6] and shall *agree* not to harvest from, or graze, the acreage,[7] yet the regulations and the contract provide that *no crop* shall be harvested from the lands, nor shall they be grazed—language sufficient to include not only the producer, his employees, but as construed by the administrative authorities here, *a trespasser.*

But both sections of the statute, emphasized above, authorize the Secretary to include *such other terms and conditions as he may determine are desirable to effectuate the purposes of the law and facilitate its practical administration.* The prohibition against *any* harvest from, or grazing of, the reserve lands is needful and necessary to guard against fraud, negligence or indifference. There has been on attempt in this case to apply it so as to make it an absolute guaranty on the part of the producer where he is without any fault whatever. The provisions of the regulation and the contract in this respect are reasonable and valid, if properly applied. As will be shown hereafter, they have been improperly applied by the county and State committees, even in the light of additional regulations [8] adopted after the contract was executed.

The question of *termination* and forfeiture of all compensation or grants is more difficult. The provisions of the statute, the regulations (which were in effect at the time the contract was executed), and of the contract itself are set out above. They provide for (1) forfei-

ture of all compensation, payments or grants if the Secretary determines that there has been a violation of such a substantial nature as to warrant *termination* of the contract; and (2) adjustments or reduction of benefits if the Secretary finds that the violation is of such a nature as not to warrant *termination.* In other words *forfeiture* of *all* compensation results from *termination*; adjustment or reduction of benefits, in the discretion of the Secretary, results where there has been a violation which does not warrant termination.

In addition the *contract* contained the following provision on its face, above the signatures:

"The undersigned producer(s) hereby agree to all of the provisions of this agreement contained in Parts I through V and in Part IX on the reverse side;  *  *  * "

"The producers will be subject to a civil penalty as specified in Part IX, Section "D", if they *knowingly and willfully* graze or harvest any crop in violation of this agreement."

Pertinent provisions on the reverse side are as follows:

(A)(1) The agreement is subject to all provisions of the regulations issued by the Secretary governing the 1957 acreage reserve program. It expressly provides, however, that *"No change in the Regulations which becomes effective after the date this agreement is executed shall be applicable if it imposes on the producer any obligation in addition to those set forth herein."*

"(D) Civil Penalty. If the producer (i) *knowingly* and *willfully* grazes or harvests any crop from the acreage reserve in violation of this agreement, or (ii) *knowingly* and *willfully* harvests any acreage of the commodity in excess of that shown in Item 6, Part 1, on the front hereof, he shall be subject to the civil penalty of 50 per centum of the compensation payable for compliance with this agreement imposed by section

6. 1831(a) (3), Title 7.

7. 1831(a) (3) and (4), same.

8. Sections 485.285 and 485.286, set out hereafter.

123 of the Soil Bank Act. *Such penalty shall be in addition to any amount required to be forfeited or refunded under section 'L' of this Part IX."*

Section "L" is headed Violations, and contains the *same provisions* as the statute and the regulations as to *termination, forfeiture* or *reduction* of payments, etc., set out. It also contains the following paragraph:

> "* * * (4) The determination as to whether a violation has occurred and whether such violation is of such a substantial nature as to warrant termination of this agreement, and the amount of any adjustment, forfeiture, or refund, shall be made in accordance with regulations issued by the Secretary."

At the time the contract in question was signed no regulations had been promulgated by the Secretary under paragraph (4) above. The only regulations were those providing, in practically identical language, the statutory language quoted above from sections (i) and (ii) of section 1821, dealing with forfeiture of *all* compensation in event of *termination,* and adjustment or reduction of payments if there was no termination. "De novo" determination as to the right to terminate and forfeit will, therefore, first be discussed in the light of the statutory, regulatory and contractual provisions as they existed when the agreement was signed.

"Forfeitures are not favored; they are considered harsh exactions, odious, and to be avoided when possible. Statutes designed to relieve from the rigors of forfeiture are looked on warmly and construed liberally so as to afford the maximum relief, and where a liberal construction of a statute will avoid the imposition of a forfeiture it will be so construed. On the other hand, a statute imposing a forfeiture should be construed strictly * * *" 37 C.J.S. Forfeitures § 4b, p. 8. This rule, together with the concern of Congress for the producer, no doubt accounts for the provision in section 1831(d) that "A contract shall not

be terminated * * * unless the nature of the violation is such as to *defeat* or *substantially* impair the purposes of the contract"; and for the repeated statutory requirement that before forfeiture of payments or grants, the Secretary first must find that there has been a violation of such *substantial* nature as to warrant termination; and for the provision that an aggrieved producer shall have the right to a *judicial* determination, de novo, as to whether there has been a violation which would warrant termination—and consequent forfeiture.

Here it can hardly be urged that the trespasser's harvesting of the small hay crop from volunteer Johnson grass, or his small amount of grazing upon the unfenced acreage, was such as to defeat or substantially impair the purposes of the contract. Added to this is (1) the practical fact that immediately above the producer's signature, in larger and bolder type than other provisions appearing on that page, or the fine type provisions on the back, it was provided that "The producers will be subject to a civil penalty as specified in Part IX, Section 'D', if they *knowingly* and *willfully* graze or harvest any crop in violation of this agreement." Notwithstanding that this called for a reading of the finely printed, and difficult to construe, conditions on the back, it was calculated to lead the average producer to believe that he would only be penalized for knowing and willful conduct. (2) The fact that neither the statute, the regulations, (in existence at the time), nor the contract anywhere hinted that a producer who did not live in the neighborhood of his acreage would be held liable for the acts of a trespasser, or would be required either to fence or police the premises and (3) The fact that the trespassing was without plaintiff's knowledge or consent.

These undisputed facts simply do not add up to a violation of such a nature as to defeat or substantially impair the purposes of the contract, or to warrant termination and forfeiture.

■ On April 5, 1957, (after the contract was signed by plaintiff on March 8,

1957, and by the Secretary's representative on March 26, 1957), the Secretary promulgated additional regulations, which, according to defendant's counsel, prescribed "the rules and procedure for determining whether a violation has occurred and the extent of the forfeiture or refund of compensation required for such violation." It is doubtful in my mind whether such rules and regulations could properly be applied to the contract theretofore executed in view of the contract provision that no change in the regulation would be applicable if it imposed any obligation on the producer in addition to those set forth. It may be, however, that they became applicable in view of the provisions of Section L(4) on the back of the contract, also set out above. The Court therefore will determine whether the forfeiture of *all* payments, grants, etc., was justified under these latter regulations.

They are sections 485.285 and 485.286, 22 F.R. 2411. They are identical in terms except that one deals with *harvesting* of a crop from, and the other *grazing* upon, the acreage reserve. It is not necessary, therefore, to copy both regulations. Section 485.285, which will serve for both purposes, reads as follows:

"(a) If a crop is knowingly and willfully harvested from the acreage reserve, the entire amount payable or paid to the operator shall be forfeited or refunded. In such case, the entire amount payable or paid to any other producer (including tenants and share croppers who did not sign the agreement) shall also be forfeited or refunded by such producer; Provided, That such forfeiture or refund shall not apply to a producer (other than the operator) if it is determined that such producer did not *cause, aid in,* or *benefit from,* the harvesting of the crop * * *.

"(b) If a crop is harvested from the acreage reserve as the result of *gross negligence* compensation shall be forfeited or refunded to the same extent and in the same manner as

prescribed in paragraph (a) of this section for knowingly and willfully harvesting a crop from the acreage reserve.

"(c) If a crop is harvested from the acreage reserve under circumstances other than those specified in paragraph (a) or (b) of this section, compensation shall be forfeited or refunded by an amount representing compensation for the number of acres harvested from the acreage reserve and the producers shall be entitled to share in the remaining compensation on a fair and equitable basis: *Provided,* That if it is determined by the county committee that the value of the crop harvested is less than the amount of the forfeiture or refund which would otherwise be required, the forfeiture or refund shall not exceed the value of the crop harvested."

It is to be noted that the action of the committee in forfeiting *all* of plaintiff's rights to compensation is based upon a finding of *gross negligence* covered by paragraph (b) above. Gross negligence is not defined in the regulations. It generally means, in the field of tort law, *extreme, reckless* or *inexcusable* negligence; but it has been defined as meaning " * * * the want of slight care and diligence * * * an entire failure to exercise care, or the exercise of so slight a degree of care as to justify the belief that there was indifference to the interest and welfare of others. Gross negligence is positive or affirmative, rather than merely passive or negative as ordinary negligence often is." 30–B Tex.Jur. 199, section 28.

While plaintiff's remaining at Burkburnett and making no arrangements for some one to see after the acreage is more consonant with ordinary than with gross negligence, yet, conceding that it amounts to gross negligence, it is to be noted that paragraph (b) above provides that "compensation shall be forfeited or refunded to the same extent and in the same manner as prescribed in paragraph (a) of this section for knowingly and

willfully harvesting from (or grazing) the acreage reserve;" but the referred to paragraph (a) does not end with forfeiture or refund. It provides that it shall *not apply* to a producer (other than the operator) if it is determined that such producer did not *cause, aid in,* or *benefit from,* the harvesting of the crop (or the grazing of the acreage reserve.) This proviso must be read into paragraph (b). It is inconceivable that anyone would want to penalize "gross negligence" for failing to prevent harvesting or grazing more than for "knowingly and willfully" harvesting or grazing. On the contrary, fair play would seem to call for penalizing knowing and willful conduct *more severely* than for failure to fence the land or police it against a trespasser. It is doubtful that an ordinarily prudent producer would have anticipated that some trespasser might harvest a "crop" of Johnson grass from, or graze, these lands to an appreciable degree.

Properly construed the regulations do not authorize forfeiture of all compensation for gross negligence if it is determined that the producer did not *cause, aid in,* or *benefit from,* the harvesting of the crop or grazing of the land. Here, all the evidence and the stipulated facts show that plaintiff did not *cause, aid in,* or *benefit from,* the harvesting of the Johnson grass or the grazing of a portion of the land by trespassers. The Court holds, therefore, that the forfeiture of all compensation was not warranted under the undisputed facts even in the light of the new regulations of April 5, 1957.

▆▆ Declaratory judgment to that effect and setting aside the forfeiture will be entered. This does not authorize the Court, however, to enter judgment for the forfeited compensation. Section 1831(d), under which the action is brought, does not so provide. It provides

for a judicial review only as to "whether there has been a violation which would warrant *termination* of the contract.[9] Counsel on both sides here have proceeded on the assumption that the Court has power to award judgment for all compensation forfeited if it finds the violation was not of such a substantial nature as to warrant termination; but counsel have not cited any statutory or other authority giving the court such jurisdiction or power.

Since the Committee misapprehended its powers under the statute, the regulations and the contract, the proper procedure is to enter judgment to that effect, set aside the forfeiture and remand the matter to the Committee for proper action. If plaintiff is aggrieved thereafter, he must exhaust his administrative remedies before seeking judicial relief.

The Clerk will notify counsel to submit an order in accordance with this memorandum.

---

9. The committee did not declare a *termination* of the contract but such determination is implicit in the forfeiture of *all* compensation since there must be a finding that a violation is of such a substantial nature as to warrant termination before there can be a forfeiture of all rights to payments or grants under the contract. Forfeiture of all compensation is deemed the equivalent of a termination under the provisions of section 485.280 of the regulations.