**UNITED STATES of America, Appellant,**

v.

**D. K. ARAKELIAN, Appellee.**
**No. 16673.**

United States Court of Appeals
Ninth Circuit.

Sept. 22, 1960.

George Cochran Doub, Asst. Atty. Gen., Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., Samuel D. Slade, William E. Mullin, Attys., Dept. of Justice, Washington, D. C., for appellant.

L. Kenneth Say, W. J. McDermott, Fresno, Cal., for appellee.

Before STEPHENS, BARNES and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

This is one of the first appellate cases to arise under the Soil Bank Act, 7 U.S.C.A. § 1801 et seq. (1958). Appellee sought judicial review of a determination by the California Agricultural and Stabilization Review Committee that by planting grape-cuttings on land which he had agreed to withdraw from cotton production under a 1957 acreage reserve agreement, he had committed a violation of the agreement which warranted its termination. The court below had jurisdiction under sections 103(a) (i) and 107(d) of the Soil Bank Act (7 U.S.C.A. §§ 1821(a) (i) and 1831(d)). This Court has jurisdiction of the appeal. 28 U.S.C. § 1291.

Part IX, B(3) of the Acreage Reserve Agreement, signed by the two parties, reads as follows:

"(3) Planting restricted. No crop shall be planted on the acreage reserve after the date of this agreement is filed with the county committee and prior to January 1, 1958, except (i) crops planted in the fall of 1957 for harvest in 1958 or a later year, and (ii) crops approved by the State and county committees for protective cover. Information as to crops approved for protective cover is available in the office of the county committee."

■ Under the terms of the Act, the person seeking compensation must do three things—(1) reduce his acreage in a specified crop; (2) designate the acreage so set aside; and, (3) must not harvest any crop from acreage set aside. Were it not for his contract, therefore, appellee is prohibited only from "harvesting," not from planting.

■ However, under the statute (7 U.S.C.A. § 1821(a)) there is no compensation due under the Act to any producer, irrespective of the Act's provisions, unless and until the producer enters into a contract with the Secretary of Agriculture.

"[Such contract] *in addition to such other terms and conditions as may be prescribed by the Secretary,* shall contain provisions by which such producer shall agree:

"(i) In the event that the Secretary determines that there has been a violation of the contract at any stage during the time such producer has control of the farm and that such violation is of such a substantial nature as to warrant termination of the contract, to forfeit all rights to payments or grants under the contract, and to refund to the United States all payments and grants received by him thereunder * * * ." (Emphasis added.)

Thus the language of the contract between the parties is controlling. By the contract, no "crop" was to be planted.

Appellee reads the word "crop" in the contract to mean "harvested crop." He urges that grapevine cuttings do not constitute a crop; that crop is something you harvest. If that be the meaning of the word "crop" in the contract, the contract does not make much sense, for the producer would only be restricted from planting that which he had already harvested.

Appellee states that grape-cuttings, if they "take," cannot be harvested within a year of their planting, and he maintains his planting comes within the first exception contained in paragraph three of the contract. The trial court agreed with him. We do not.

Even were we to assume the prohibition against crop planting excepted "harvest crop" planting (meaning that any crops harvested more than a year after planting were to be excepted from the general rule), we note that it is not *all crops* planted in 1957 for harvest in 1958, or a later year, that are to be excepted, but only those planted "in the fall of 1957 for harvest in 1958 or a later year."

It is uncontradicted that appellee signed the acreage agreement offering to withdraw land from planting on March 12, 1957; that the government accepted his offer on April 10, 1957; that all grape-cuttings were planted between March 18 and March 27, 1957. Under no interpretation of the facts can it be said appellee planted in the fall of 1957. On March 13, 1957, before any planting, appellee had been advised by the Fresno Agricultural Stabilization and Conservation County Committee that the planting of grapevine cuttings would violate his agreement. Appellee chose to go ahead with his planting. On June 21, 1957, he was advised by the County Committee that he must destroy his grape-cuttings or lose his compensation. No estoppel or change of position can be claimed by appellee. And the failure to respect the terms of the contract cannot be deemed anything other than "a violation of a substantial nature." Inman v. United States, D.C.S.D.Tex.1959, 172 F.Supp. 841, 844.

The district court found that grapevine cuttings do not constitute a crop within the meaning of Part IX, B(3), of the Soil Bank Agreement hereinbefore quoted. The terms used in the contract are clear, and appellee cannot come within either exception specified. The court's finding was clearly erroneous, and the judgment is reversed, with direction to enter judgment against appellee.

We need not reach appellant's second point.

Reversed.