**R. G. HOLDEN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**W. E. CONNER, Trustee, G. D. Clements Estate, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Nos. B–330, B–331.**

United States District Court
E. D. Arkansas, N. D.
Oct. 19, 1960.

Fred M. Pickens, Jr., Newport, Ark., for plaintiffs.

James W. Gallman, Asst. U. S. Atty., Little Rock, Ark., for defendant.

HENLEY, Chief Judge.

These two suits, which present a common jurisdictional question, were brought by plaintiffs, who are farmers residing in Jackson County, Arkansas, against the United States to secure judicial review of determinations of the Arkansas State Agricultural Stabilization and Conservation (ASC) Committee that the respective plaintiffs knowingly filed false claims against the Government and misused certain purchase orders issued to them in connection with their participation in the Conservation Reserve Program set up by the Soil Bank Act of 1956,[1] and that as a result of their actions plaintiffs have become subject to forfeitures of the unpaid portions of the purchase orders and liable to make refunds of the portions of said orders that have been paid by the Government. Jurisdiction is invoked under 7 U.S.C.A. § 1831(d).

The actions were commenced originally against the State Committee and its Executive Officer. In the original complaints plaintiffs sought not only orders setting aside the determinations mentioned, but money judgments for the amounts withheld from them as a result of said determinations. The Government moved to dismiss the complaints for lack of jurisdiction, for failure to state claims upon which relief could be granted, and for failure to join an indispensa-

[1] Act of May 28, 1956, Public Law 84–540, Title I, 70 Stat. 188 et seq., Ch. 327, 7 U.S.C.A. §§ 1801–1837.

ble party defendant, namely, the United States.

On June 3, 1960, the Court, after considering the motions and the memorandum briefs of the parties, advised counsel by letter that it had serious doubt that the complaints stated claims upon which relief could be granted or which were within the jurisdiction of the Court. It was also pointed out in the letter that it seemed clear to the Court that the Government should be substituted as a party defendant, and that in no event could the Court render any money judgments in favor of the plaintiffs. The Court cited Maxwell v. Benson, D.C. Iowa, 173 F.Supp. 75, and Inman v. United States, D.C.Tex., 172 F.Supp. 841. Counsel for the plaintiffs was allowed additional time within which to amend the complaints so as to establish more fully the Court's jurisdiction.

Thereafter, by amendments, the United States was substituted as a party defendant and the claims for money judgments were deleted. The only other change which it is deemed necessary to notice is that in their amendments the plaintiffs alleged that the challenged determinations were arbitrary, discriminatory, and capricious, and amounted to terminations of the contracts.

To the amended complaints the Government renewed its motions, and plaintiffs filed a supplemental letter brief. The Government did not formally supplement its brief, but did call the Court's attention to the opinion of the Court of Appeals affirming with a modification the decision of the district court in the Maxwell case. United States v. Maxwell, 8 Cir., 278 F.2d 206.

## I.

■ The Soil Bank Act was passed by Congress in 1956 for the two-fold purpose of combatting the problem created by ever-mounting surpluses of agricultural products and conserving natural resources, including soil, forests, water, and wildlife. Basically, the soil bank plan is that lands will be withdrawn from agricultural production and that conservation practices will be initiated and maintained on idle lands.

The Act sets up two programs, one the Acreage Reserve Program, with which the Court is not concerned in these actions, and the other the Conservation Reserve Program in which the respective plaintiffs agreed to participate in 1957.

A farmer desiring to participate in the Conservation Reserve Program enters into a contract with the Government,[2] the form and contents of which are prescribed by the statute and the regulations. The farmer agrees, among other things, that for a period of not less than three years he will establish and maintain certain conservation practices on lands to be placed by him in the conservation reserve; that he will not harvest any crop from such lands, except timber, wildlife, or other natural products which do not increase supplies of feed for domestic animals; that, with certain exceptions, he will not permit such lands to be grazed; and that he will not adopt any practice or farm use specified by the Secretary as one which would tend to defeat the purposes of the contract. 7 U.S.C.A. § 1831(a) (1–5).

As consideration for the farmer's agreement the Government undertakes to bear a part of the cost of establishing and maintaining the conservation practices called for by the contract, and also to make annual payments to the farmer on a per acre basis during the life of the contract. 7 U.S.C.A. § 1831(b).

The records before the Court reflect that the respective plaintiffs entered into conservation reserve contracts in 1957 for periods extending, in general, from 1957 through 1961. As indicated, the

2. The program is administered by the Secretary of Agriculture who acts through County and State ASC Committees. By section 124 of the Act, 7 U.S.C.A. § 1812, the Secretary is given authority to prescribe appropriate regulations for the carrying out of the provisions of the statute. Those regulations appear in 6 C.F.R., Part 485.

plaintiffs agreed that they would establish and maintain conservation practices on the lands placed in the conservation reserve, and they became entitled to receive annual payments with respect to such lands and to have the Government share in the expense of establishing and maintaining the programs on said lands. There is no dispute between the parties as to the annual payments to be made by the Government. Presumably, those payments have already been made with respect to the contract years that have passed, and will be made for the remaining contract periods. The controversy relates to the Government's participation in the cost of the programs, which participation is hereinafter called the Government's "cost-share."

Under the statute the Government may pay its cost-share to a farmer participating in the conservation reserve program either in cash or by the issuance of purchase orders which will enable the farmer to obtain conservation materials or services. 7 U.S.C.A. § 1835. The conservation reserve contracts provide specifically that the farmer shall not knowingly use a purchase order issued to him for conservation materials or services for a purpose other than that for which it was issued, and that the misuse of a purchase order shall constitute a violation of the contract. The contracts also provide that the filing of false claims for payments, including Government cost-share payments, shall constitute violations.

It is provided by regulation that where a purchase order is misused the farmer shall forfeit or refund an amount equal to the cost of the purchase order borne by the Government, or that part of the cost of the material or services borne by the Government, as the case may be (6 CFR § 485.294e) ; and that where a false claim for a Government cost-share payment is made, the farmer shall forfeit or refund such payment to the extent of the false claim (6 CFR § 485.-294h).

## II.

The record in No. 330 reflects that on June 25, 1959, the State ASC Committee, following preliminary proceedings before the Jackson County Committee, determined that the plaintiff, R. G. Holden, had misused a purchase order and had filed a false claim for cost-share payment. The amount of the cost-share payment involved was $1,430.96 of which $615.92 actually had been paid by the Government. Mr. Holden was required to refund the latter amount and the balance was forfeited. The notice of that determination, which was mailed to Mr. Holden, reflects that a hearing was held before the County Committee on January 29, 1959, and that plaintiff had appeared before the State Committee on March 12, 1959.

The record in No. 331 reflects that on June 25, 1959, the State ASC Committee determined that plaintiff, W. E. Conner, Trustee of the G. D. Clements Estate, had misused purchase orders and filed false claims for cost-share payments amounting to $6,731.41, of which $5,-869.57 actually had been paid by the Government. Mr. Conner was required to refund that amount and to forfeit the balance of $861.84. As in the case of Holden, the notice of determination mailed to Mr. Conner reflects that said determination was preceded by hearings before the County and State Committees.

It is contended by plaintiffs that having exhausted their administrative remedies they are entitled to a judicial review of the determination in question. The Government, on the other hand, takes the position that the review afforded with respect to violation determinations made by the State Committee is limited, and that the determinations here challenged do not fall within the scope of such review.

Since jurisdiction is involved, the burden is upon the plaintiffs to show that they are entitled to review. See 54 Am. Jur., United States Courts, § 139 and cases there cited.

## III.

When it passed the Soil Bank Act, Congress recognized that there might be violations of both acreage reserve and conservation reserve contracts. It was recognized that some breaches would be sufficiently serious to justify terminations of the contracts, whereas other breaches, while perhaps serious, would not justify termination. In that connection it was specifically provided that a breach of contract will not justify a termination unless its nature is such as "to defeat or substantially impair the purposes of the contract," 7 U.S.C.A. § 1831(d), which purposes, as stated, are the reduction of acreage planted in commercial crops and the conservation of natural resources.

Where a farmer commits a contract violation of a nature which defeats or substantially impairs the purposes of the contract, termination is authorized, and the farmer forfeits all payments and benefits thereunder. Where the violation is not of a type which would justify termination, the farmer is required to make compensation by accepting administratively determined payment adjustments or forfeitures, and by making refunds of amounts determined to have been received improperly. The statute requires that those provisions be incorporated in conservation reserve contracts, 7 U.S.C.A. § 1831(a) (6) (A) & (B), and said provisions are incorporated in the contracts involved in these cases.

With regard to violations which would justify termination, the statute provides that, if the State Committee "believes" that a farmer has been guilty of such a violation, the Committee is to give the farmer notice, and such farmer has the right to show cause in an informal proceeding before the County Committee why the contract should not be terminated. Following the proceeding before the County Committee, that body is required to submit a report, including a recommendation, to the State Committee for a determination as to whether there has been a violation which would warrant termination. Prior to the making of the State Committee's final determination, the farmer has a right to appear before that Committee and be heard, and he is to be given notice of the Committee's final determination.

It seems clear that the State Committee may determine that no violation has been committed, or that a violation has been committed which justifies a termination of the contract, or that although a violation has been committed it is not sufficiently serious to warrant termination.

If the State Committee finds that there has been a violation warranting termination, and if the farmer feels aggrieved with that determination, he has a right under the statute to obtain a judicial review in the federal district court for the district within which his land is located, and upon such review he is entitled to a trial de novo on the issue of "whether there has been a violation which would warrant termination of the contract." 7 U.S.C.A. § 1831(d).

■■■ Thus it will be seen that judicial review is limited to cases in which the State Committee has found a violation or violations which justify termination of the contract. Of course, it is not necessary for the State Committee to say in so many words that it is terminating the contract. A termination may be implicit as well as express. An administrative action which in effect deprives a farmer of all of his benefits under a soil bank contract amounts to a termination thereof. Maxwell v. Benson, supra, 173 F.Supp. at pages 79–80; Inman v. United States, supra, 172 F.Supp. at page 847, footnote 9.[3] Determinations of violations of lesser degree and

---

3. Implicit terminations are more readily apparent in acreage reserve contract cases than in cases involving conservation reserve contracts. This is true because the acreage reserve contracts are for terms of one year only, whereas conservation reserve contracts cover periods of at least three years. Hence, where all of the payments accruing to a farmer with respect to any one year under an

the imposition of sanctions with respect to such lesser violations are not reviewable by the district courts. Those limitations on the scope of review are made clear by the statute itself, and by the holding of the Court of Appeals in Maxwell, supra.

Since Congress evidently intended that an administrative determination that grounds for termination of an acreage reserve or conservation reserve contract exist would be followed by a termination of such contract, it would seem from a practical standpoint that judicial review can be obtained only where there has been a termination. Such is the interpretation placed on the statute by the Department of Agriculture in the Soil Bank Regulations. 6 CFR § 485.-280.

That Congress may constitutionally so limit judicial review in a case of this kind has been recognized in Elliott v. United States, D.C.Neb., 179 F.Supp. 758, and in Schexneyder v. United States, D. C.W.D.La., Opelousas Division, Docket No. 6819. Cf. Stark v. Wickard, 321 U.S. 288, 306, 64 S.Ct. 559, 88 L.Ed. 733; and Mario Mercado E Hijos v. Benson, 97 U.S.App.D.C. 298, 231 F.2d 251.

■ Not only is the scope of review in cases of this kind limited as aforesaid, but the relief that the courts can grant is also sharply limited. The only issue before the court in a given case is whether there existed a violation which would justify a termination of the contract. Even if that issue is decided in favor of the farmer, the court can do no more than set the determination aside. It cannot order the Government to make a money payment to the farmer. Further, a holding by the court that the violation does not justify a termination does not preclude the Committee from imposing payment adjustments or forfeitures and demanding refunds. United

States v. Maxwell, supra, 278 F.2d at pages 213–214.

As to whether violations of a contract have been committed, and as to whether such violations justify termination, the contracts provide that the determinations of those questions and the determination of the amount of any adjustments, forfeitures, or refund shall be made by the Secretary "in accordance with regulations" issued by him.

The regulations define a number of violations, including the misuse of purchase orders and the filing of false claims, and prescribe adjustments, forfeitures, and refunds with respect thereto. 6 CFR §§ 485.294 and 485.294 (a)–485.294(i). Section 485.294(j) then goes on to provide that conservation reserve contracts shall be terminated if certain types of violations have occurred for two consecutive years of the contract period. Those types of violations, including, e. g., the harvesting of crops from and the grazing of conservation reserve lands, would obviously tend to defeat or seriously impair one or both purposes of the Conservation Reserve Program.

Significantly, however, the filing of a false claim or the misuse of a purchase order is not declared to be a basis for termination, although a farmer filing such a claim or misusing a purchase order becomes liable to forfeitures and to make refunds, as noted heretofore.

■ Even if it be assumed that the Secretary could have provided for termination on account of false claims and misuse of purchase orders, the fact remains that it is the function of the Secretary to determine in the first instance whether a violation of a certain type calls for termination, and he has chosen not to terminate on account of violations of the type here involved. A rational basis for this choice is seen

acreage reserve contract are forfeited or order refunded, the farmer has lost all of his benefits under the contract. That is not true with respect to a conservation reserve contract. A farmer may lose benefits under such a contract for one or more years without affecting his right to benefits with respect to other years. Inman, supra, involved an acreage reserve contract only, whereas Maxwell involved both types of contract.

when it is remembered that the Secretary is not permitted to terminate a contract unless the breach is sufficiently serious to defeat or seriously impair the purpose of the contract. While the filing of a false claim or a misuse of a purchase order is a serious matter and may amount to a fraud against the Government, it is not conduct which necessarily tends to defeat or impair the purpose of the contract. A farmer actually may institute and maintain the conservation practices called for by his contract and at the same time misuse purchase orders and make false claims. Hence, the Court is persuaded that the Secretary's decision not to terminate on account of false claims or misuse of purchase orders was not an unreasonable or unlawful exercise of administrative discretion. Indeed, it may have been required by the statute.

## IV.

■ From what has been said up to this point, it is obvious that the determinations involved in these cases are not reviewable in this Court. The State Committee made no determination of a violation which would have justified the termination of either contract under the regulations mentioned, and neither contract has in fact been terminated either in express terms or by necessary implication. Rather, the Committee found violations which called for forfeitures and refunds of only a part of the benefits received and to be received by the respective plaintiffs. The annual payments inuring to the plaintiffs have not been forfeited or ordered refunded, nor can it be said affirmatively that the forfeitures of the Government's cost-share payments covered all of such payments that the Government had made or was obligated to make under the contracts.

■ Plaintiffs are not helped by their bare allegations that the determinations were arbitrary, capricious, or discriminatory. No facts are alleged or shown from which arbitrary, capricious, or discriminatory action can be inferred, and the presumption is that the deter-

minations were fairly made and were based on evidence. That plaintiffs were given a hearing by both the County and State Committees affirmativly appears. If a farmer is allowed to secure judicial review of an ASC Committee determination merely by saying that it was arbitrary or capricious, the congressional limitation on judicial review would be swept away.

In dismissing these cases, as it must under its view of the law, the Court is doing nothing but giving recognition to the limitations on its jurisdiction imposed by the Congress and enforcing the provisions of the contracts into which both plaintiffs voluntarily entered.

Let orders of dismissal be entered.