**UNITED STATES of America, Plaintiff,**

v.

**Boyce B. YARBROUGH, Defendant.**

**No. EC 6575.**

United States District Court

N. D. Mississippi, E. D.

Sept. 12, 1968.

H. M. Ray, U. S. Atty., Oxford, Miss., for plaintiff.

Jess B. Rogers, Tupelo, Miss., for defendant.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This case, presented on motion of the United States for partial summary judgment,[1] concerns the availability of judicial review of a termination of a Conservation Reserve Contract under the Soil Bank Act, 70 Stat. 188, 7 U.S.C. § 1801 et seq. The facts are set forth briefly as follows:

On September 29, 1958, while employed as manager of the Sharkey County Agricultural Stabilization and Conservation Office (hereinafter called "ASC"), defendant Yarbrough applied to the County Committee for a Conservation Reserve Contract on a farm owned by him in Sharkey County, Mississippi, certifying that there was a total of 280 acres of land in his farm which were eligible as cropland and tame hay land to be designated as "Conservation Reserve". The contract, as finally consummated on February 2, 1959, and as modified on January 24, 1961, specifically designated 187.1 acres of land on the farm which Yarbrough had certified to be eligible cropland and tame hay land to constitute the Conservation Reserve.[2] The contract provided that for the period of 1959 through 1968, all of the designated acreage was to be devoted to a permanent cover of grass and that Yarbrough would receive an annual payment of $14.80 per acre, for a total annual payment of $2,769.08, as well as an amount of $802.82 which was Yarbrough's share of the cost of carrying out the conservation practices on the designated land for the year 1959.

Subsequent to its having made payments to Yarbrough in the total amount of $11,879.14 for the years 1959 through 1962, inclusive, the ASC State Committee determined at a hearing on June 26, 1964, that, with the exception of approximately 5 acres, the land designated by Yarbrough as eligible cropland was, in fact, not eligible land as it had been brought into production after December 31, 1956, without being offset by an equal acreage in non-crop, conservation use. (See footnote 2). As a result of such determination, Yarbrough was suspended from his employment as County Office Manager. On September 2, 1964, the Sharkey ASC County Committee directed a letter to Yarbrough advising him that, based on the information contained in the transcript of the June 26 hearing before the State Committee, it had determined that the land placed in the Conservation Reserve Program was ineligible. On October 6, 1964, Yarbrough, represented by counsel, attended a requested hearing before the County Committee on the question of whether the contract conformed with the regulations. The Committee again determined that the defendant had placed ineligible land in the Conservation Reserve Program and that, therefore, the cost shares and annual payments made to him under the contract must be refunded. On November 19, 1964, the defendant prosecuted an appeal before the State Committee, and at this hearing further evidence was introduced as to the circumstances of the defendant's executing the Contract, and also as to the knowledge of the defendant of the eligi-

---

1. Count I of the complaint of the United States, with which we are here concerned, alleges only invalidity of the Conservation Reserve Contract under consideration herein. Count II, alleging fraudulent certification of acreage eligibility, is not considered on plaintiff's motion for summary judgment.

2. Under regulations prescribed by the Secretary of Agriculture governing the Conservation Reserve Program, 7 C.F.R. 750.153, the land in a farm which was eligible to be designated as "Conservation Reserve" is described as follows:

"Land eligible to be designated as the Conservation Reserve is limited to cropland, land devoted to tame hay which does not require annual tillage, and land which was tilled or was in regular crop rotation during the year immediately preceding the first year of the Contract period which constitutes, or will constitute if tillage is continued, but excluding * * * land brought into crop use on a farm since December 31, 1956, which is not offset on such farm by the retirement of at least an equal acreage of cropland into noncrop use * * *."

bility of the land which he had designated therein. On that day, the State Committee advised defendant that it was affirming the determination of the County Committee. Defendant was advised that he could appeal the decision to the Deputy Administrator, State and County Operations, Agricultural Stabilization and Conservation Service, United States Department of Agriculture, Washington, D. C., within fifteen days. The defendant failed either to appeal the decision or to pay any portion of the $11,879.14 found by the County and State Committees to be due. The United States instituted this action on October 4, 1965, and this motion for summary judgment followed on May 4, 1967.

The crux of the government's contention in support of its motion for partial summary judgment is that since the issue of eligibility of the designated acreage has been finally determined in accordance with 7 U.S.C. § 1809 and the regulations thereunder, 7 C.F.R. 750.178 and 7 C.F.R. 750.180(b),[3] there can be no judicial review, and that the United States is thus entitled to judgment as a matter of law pursuant to Rule 56, F.R.Civ.P. Defendant does not dispute that final administrative determinations in § 1809 cases are not reviewable by the federal judiciary. What is at issue, however, is defendant's assertion that, since Yarbrough's contract was "terminated" by the intra-agency adjudicatory process, the proceedings should have been con-

ducted pursuant to 7 U.S.C. § 1831,[4] and that summary judgment should not be granted, since, pursuant to § 1831, federal judicial review is accorded an aggrieved producer.

 We concur in defendant's assertion that Yarbrough's contract has been "terminated", since "an administrative action which in effect deprives a farmer of all his benefits under a Soil Bank Contract amounts to a termination thereof", notwithstanding that the State Committee fails to state in so many words that it is terminating the contract. Holden v. United States, D.C., 187 F. Supp. 790, 8 Cir., 297 F.2d 831. To render such action of the ASC Committee subject to federal judicial review, however, the termination of the contract must be for a violation thereof. Dickson v. Edwards (5 Cir. 1961), 293 F.2d 211; United States of America v. Hill, No. W. C. 6337.

 The *Dickson* case, controlling authority in the Fifth Circuit, clearly teaches that in determining the availability of judicial review a distinction must be made between conduct violative of a Conservation Reserve Contract and that which is not. Involved there was the loss to the plaintiff of benefits under a Conservation Reserve Contract by virtue of his landlord's termination of the farm lease, pursuant to which plaintiff held a leasehold interest in the designated acreage. Plaintiff treated this as a "termination" of the Conservation Reserve Con-

---

3. 7 U.S.C. § 1809 provides that:
 "The facts constituting the basis for any payment or compensation, or the amount thereof, authorized to be made under this chapter, when officially determined in conformity with applicable regulations prescribed by the Secretary, *shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government.* * * *" (Emphasis added) 7 C.F.R. 750.178 implementing § 1809, provides for finality of administrative determination in substantially the same language. 7 C.F.R. 750.180(b) outlines the appeal procedure to be followed in conducting the requisite hearings.

4. 7 U.S.C. § 1831, too lengthy to quote herein, provides, so far as concerns the issue in the case at bar, that in the event the Secretary of Agriculture determines that there has been a violation of the contract which warrants termination thereof, the producer may be ordered to forfeit all rights to payments under the contract and to refund all payments theretofore received, except that, on timely notice, an aggrieved producer may obtain a trial de novo in the District Court for the district wherein the subject land is located.

tract, and, in accordance with 7 U.S.C. § 1831(d), complained successively to the County and State Committees. Unable to obtain relief, he filed suit in the federal district court wherein the land was located, seeking a trial de novo on the issue of the validity of the termination. The trial court, without reaching the merits, held that, since no review of this kind of action was prescribed under the Soil Bank Act, it was without jurisdiction, and the Court of Appeals for the Fifth Circuit, in sustaining the action of the district judge, stated the applicable rule of law as follows:

> "In brief, the reasoning [of the District Court] was that judicial review is provided only where the Secretary terminates a contract because of a *violation* of the contract. Consequently, the Court concluded since Dickson did not *violate* the contract and his rights terminated simply because he was no longer the lessee the statutory basis for review was lacking. The result, so Dickson argues with force, is that this is almost to state that if there is doubt about violation judicial review is available, but if there is *no* legal reason whatsoever for terminating a contract, it is free of any judicial scrutiny. That, he claims, is a paradox—if not an absurdity—and surely not contemplated by Congress. Beguiling as is this argument, [cases cited] a consideration of this complex agricultural program demonstrates that Congress intended this result * * *." (Emphasis added)

The analogy between *Dickson* and the case *sub judice* is clear. The plaintiff in Dickson lost his contractual benefits simply because he no longer held a leasehold interest in the designated acreage. Here, termination of the contract results, not from conduct of the producer which is violative of the contract, but rather from the status of ineligibility possessed by the designated acreage. We perceive the rule laid down by that case to be that in order to constitute a "violation",

there must be conduct on the part of the producer, by way of commission or omission, which is contrary to the material provisions of an otherwise valid and subsisting contract. The procedure envisioned by 7 U.S.C. § 1831(d) contemplates only contracts which have been authorized by Congress and the Secretary's regulations. This reasoning is bolstered by the following enumeration in 7 C.F.R. 750.203 et seq. of the type of "violations" coming within the meaning of § 1831(d): acreage in excess of the permitted acres under a contract being devoted to a crop; harvesting or grazing the conservation reserve (see United States of America v. Fratesi, 235 F.Supp. 484, N.D.Miss.); unauthorized use of water stored on the conservation reserve; failure to prevent the spread of noxious weeds; failure to establish and maintain vegetative cover; or breaking out of non-crop land.

The case at bar is not one in which resort to the courts have been authorized by Congress, but involves a determination of fact to be administratively determined under the provisions of 7 U.S.C. § 1809. It was the intention of Congress to prevent judicial review in cases such as this, Elliott v. United States, 179 F.Supp. 758 (D.C.Neb.1959), and the Constitution does not, in such circumstances, require that a remedy through the courts be provided. Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733; Hijos v. Benson, 231 F.2d 251 (D.C.Cir. 1956). It must be said that there does not exist in this record any dispute as to any material fact and that, therefore, plaintiff is entitled to judgment as a matter of law.

■■ Even assuming, for the sake of argument, that defendant's conduct constituted a "violation" of the contract, his substantive right to judicial review would be foreclosed by his failure to avail himself thereof within ninety days from the date of the final determination

by the State Committee, as required by 7 U.S.C. § 1831(d).[5] That failure to seek timely review renders the State Committee's determination final and conclusive was specifically held in United States v. Fratesi, supra. Even were this properly a § 1831 case, erroneously prosecuted by the government in accordance with § 1809 administrative procedures, we would still not be persuaded by defendant to declare those proceedings void. The guaranty of due process, viewed in its procedural aspect, requires no particular form of procedure. NLRB v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381.

It is clear from the record before us that in the administrative hearings conducted prior to institution of this action, defendant was given adequate advance notice of all pending proceedings and a reasonable opportunity to appear to fully assert his rights and offer evidence in support of his contentions. He was accorded the opportunity to appeal from the adverse determinations[6] and to be represented by counsel to assist him in his defense. This is all that due process requires, and, despite defendant's understandable mistake as to the applicable statute, the inescapable conclusion to be drawn from any view of this record is that summary judgment solely on the issue of the eligibility of the designated acreage should be granted.

Since no fact issue is hereby presented, an order sustaining plaintiff's motion for summary judgment with respect to Count I of the complaint will be entered.

---

5. The 90-day limitation reads as follows:

 "The producer shall be given written notice by registered mail or certified mail or personal service of the State committee's determination. If the producer feels aggrieved by such determination, he may obtain judicial review of such determination by filing a complaint with the United States district court for the district in which the land covered by the contract is located, *within ninety days after the delivery or service of notice of such determination, requesting the Court to set aside such determination.*" (Emphasis added)

6. A part of the procedural due process afforded defendant was a right to appeal to the Deputy Administrator within fifteen days from final determination of State Committee. Defendant failed to pursue this remedy, which possessed substantial value in the administrative process.